No. 9607.

BERNARD KLOTZ VS. CHARLES MACREADY ET AL., EXECUTORS.

. A surviving partner, bound by the articles to liquidate the concern within six months after the dissolution of the partnership by death, and who has no rights, after the expiration of that term, to prolong the liquidation, is liable for the value of all the assets at the termination of the delay, when they cannot be returned *in integrum.*

-Such partner cannot shield himself from responsibility by showing that those assets have been sold by judicial authority, when it is shown that the property apparently adjudicated to outsiders, and which never left his possession, has been transferred to him for the same prices, on the same day, or shortly after, conformably to a previous understanding.

'Where part of such assets is not thus transferred, in consequence of a deception, the partner will nevertheless be responsible, when it appears that bidders were deterred from bidding for his benefit.

"The succession of the deceased partner is entitled to recover, after deducting the liabilities from the assets, the share to which the deceased is, by the articles of partnership, authorized to claim in the residue, with legal interest from the expiration of the delay allowed for the liquidation of the concern.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot,* J.

*T. J. Semmes & Legendre, T. Gilmore & Sons* and *J. Ad. Rozier* for the Executors, Appellants:

Land purchased by a commercial partnership belongs to the individual members as joint owners, and not to the partnership.  30 Ann. 869; 35 Ann. 839.

The partner who makes advances beyond capital agreed on is entitled to interest.  129 Mass 518; 2 Lindley Part., sec. 787; 2 Lansing, 366.

Partner has no right to withdraw his capital during the partnership.  C. C. 2858; 129 Mass 518; 2 Lindley Part., sec. 611.

The partner who, after the dissolution of the firm, uses partnership assets in new business is liable for profits or interest, at the option of the plaintiff.  2 Lindley Part., secs. 977–9 25 Gratt. 536; 1 Giffard, 86; 4 Myl. & Craig, 41; 9 Hare, 141; 8 Ch. App. 323 (n).

Co-partner in the new business not a necessary party unless a judgment is sought against him for knowingly participating in the breach of trust.  1 Giffard, 86; 2 Lindley Part., sec. 979; 58 N. H. 449.

*W. S. Benedict* and *A. J. Murphy* for Plaintiff and Appellee.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J.    This is an action for the settlement of a partnership once existing between Margaret Haughery and Bernard Klotz for the bakery business.  It was originally formed to last ten years, but it expired at the death of the former partner, which occurred on February 9, 1882.

While on the one hand the surviving partner tenders $3360 86 as the share accruing to his deceased partner, the executors of the latter insist that the real sum due is $40,997 02, for which there ought to be judgment with interest.

After hearing a large number of witnesses and considering a mass of written evidence, the district court found that the residue consisted of real estate and an oven, and a sum of $22,030 59, which it directed should accrue equally to the parties, OR $11,015 29 to each partner, besides half of the property.   From this judgment defendants appeal.

Answering the appeal, plaintiff prays that the judgment appealed from be amended so as to conform with his accounts.

It appears that by the articles of partnership the survivor was, in case of dissolution thereof by death, to be allowed six months to wind up the affairs of the concern; that at the expiration of that delay, however, Klotz had himself appointed liquidator, inventorying the property in his hands and disposing of the same, under the provoked direction of the court which had appointed him.

On appeal from the different decrees rendered in the course of the proceedings, this Court held that Klotz had no right to enter upon another term of liquidation, in the face of the opposition of the executors; that his appointment, as well as all the orders procured by him

to sell out the property of the partnership, were unwarranted and ought to be (and they actually were) annulled, and the application was rejected. 35 Ann, 596.

The record shows that, notwithstanding the appeal which, it is claimed, operated suspensively, Klotz had the property offered for sale by an auctioneer, and that it was adjudicated to certain parties, at prices far below its valuation in the inventory. The real estate, though adjudicated, however was not taken by the bidders, and remains in kind. The property otherwise bid off, in all instances, save one, appears to have been transferred by the adjudicatees, on the same day, or some short time after, for the same prices to Klotz, or the partnership, which he had formed with Joyce, a former clerk of his.

The account which Klotz presented, pending the suit, is open to many attacks which were actually made upon it.

It implies the validity of all the proceedings had by him as liquidator; but as his appointment was annulled, and as there are no *third* persons concerned, those proceedings must be considered as though they never existed; the more so, as all the property said to have been sold, except in one instance, is now, from Klotz's own standpoint, in his possession *as owner*.

The parties, at least, two of them, to whom the property was so adjudicated, and who afterwards passed it to Klotz at the same prices, appear as sureties on the latter's bond as liquidator. They must have known that he was acting in a fiduciary capacity, at least as agent, and that as agent, he could not buy the property of his principal, directly or indirectly.

It is claimed that they acted in good faith; but it seems strange that they undertook to buy objects for which they had no use, which they did not care about, which never came to their possession, and which they subsequently passed to Klotz at the prices of adjudication. This is the more singular when it is considered that it appears that bidders were deterred at the sale, in some cases, on the representation, expressly or impliedly made, that Klotz was buying or intended to buy.

It is remarkable that the property thus bid off, at prices frightfully below the appraisement thereof, appears, after the transfer by the adjudicates, to have been acquired by Klotz's new firm at prices surprisingly superior.

The decrees appealed from and reversed, under which those transactions took place, may well be assimilated to a judgment appealed from and reversed, under which, in the meanwhile, the judgment

creditor acquires property of his judgment debtor and detains possession of the same. In such cases, the rule, well founded on reason, equity and law, is that the defendant is entitled to restitution of the thing itself *in integrum*, for none is injured, save the wrong-doer himself.

From this standpoint, which is the correct one, the assets comprising the active mass of the partnership must be viewed as in the possession of Klotz, and must be dealt with as though no proceeding whatever had taken place, after the expiration of six months, within which he was to have wound up and done what the articles required of him, viz: "Make and render a true, just and final account for all things relating to the business and a true adjustment and division of the stocks and profits thereof."

Although, in legal contemplation, the property is or ought to be there *in integrum*, it does not, however, follow that, by surrendering it to-day, *as it is*, Klotz can relieve himself from the consequences of his illegal acts and persistent dereliction of duty.

That property is surely not, at *present*, in the condition, in point of worth, in which it was at the expiration of the delay allowed for winding up. It has been used by Klotz for the purposes of the new firm. Unavoidably, it has considerably deteriorated, after a use exceeding four years. Being more or less worn out, it cannot be tendered at all, as property in *integrum*.

This condition of things is brought about by Klotz himself. It is the legitimate result of his failure to perform his obligations, *in time*, as the surviving partner. He would have no one to blame but himself, if any injury has been sustained; but the evidence shows that, by using that property, in the business of his new firm, he has realized profits, comparatively quite large.

The value of the property at the end of the six months, less debts and charges of the old partnership, must serve as the basis of his accountability, and the residue, actual and constructive, must be equally apportioned between the partners.

Among the property offered for sale by the auctioneer, were two flue boilers, which had cost $1000 two years before. These were adjudicated for $275, but were afterward sold to a boiler maker for $800, without being moved.

It appears that they were being bid on by a by-stander, who stopped bidding, because told, by the party to whom they were subsequently adjudicated, that he was purchasing for Klotz. It also appears that

41

there had been, previous to the sale, an understanding between the latter and this adjudicatee, to that end, and that after the sale Klotz, who had expected a return of the boilers, complained that the adjudicatee had not treated him right.

Leaving out of view the question whether the order of sale was or not suspended by the appeal, it is manifest that from the incipiency throughout, Klotz was impelled by selfish considerations, the object of which was to enrich himself *per fas et nefas*, at the expense of the estate of his deceased partner, and that had it not been for the deception practiced on him, and of which he bitterly complained, the boilers, like the rest of the property, would have gone back to him.

Had such been the case, he most assuredly could be held for their value, but the difficulty is removed by the consideration that had he not combined as he did, the boilers would have realized their value.

We, therefore, deem that he should be responsible for the boilers, as he is for the other property.

The parties have taken much trouble and pains to show what amount accrues to the succession of Margaret Haughery. We have patiently followed them in their respective theories and computations, and considered their conclusions; but cannot justify the result to which either side has arrived, particularly that presented by the surviving partner, who has operated upon foundations of no solidity, and which have entirely given way, with the structure erected upon them.

He has been unable to convince us that a most prosperous partnership which, from June 30, 1879, to August 9, 1882, realized as profits $61,066 61, and the assets of which aggregated at that last date (which is that of the expiration of the six months to wind up), $58,857 28, nets actually $3360 86 only, as the share of the succession therein—a share for which he himself, about that time, had offered to the executors, $32,000, but which the latter declined, as inadequate.

The theory of the executors and their computations of the rights of the parties appear, to a certain extent, more consonant with the law governing in such cases and with the accounts and facts disclosed by the record.

They admit the conclusions of the lower court, in a measure; but they complain that the judge has entirely omitted to debit Klotz with the large amounts which he has drawn and with which he ought to have been charged.

We find that this complaint is well founded.

After deducting from the assets, which include Klotz's debit, as well as the value of the real estate and oven, and a mortgage note of $10,-

000 paid, and the other liabilities of the partnership, the executors conclude, rightfully we think, that the rights of Margaret Haughery's succession ought to amount to $31,341 65; but they err when they assume that the succession is also entitled to one-half of the profits realized by the new partnership, viz: $9655 37— the total of these two amounts being the $40,997 02 mentioned in the beginning of this opinion.

We feel no hesitation in adopting the correctness of the former conclusion as to the $31,341 65, as that sum is less than that which Klotz had offered to the executors as the value, put by himself, on the share of the succession in the partnership, but which the executors, under a commendable sense of duty, did not deem themselves authorized to accept.

This amount, had it been seasonably paid, would have realized fruits in some form in the hands of those whom the testatrix had designated as the worthy objects of her charity; but it was not paid. It was retained by Klotz, utilized by him and is represented as having assisted in enabling him to realize for his new firm profits nearing $20,000.

If it were true that the succession is entitled to half of that sum, under the law, it would be because the succession was a partner in the concern. Such being the case, would it not likewise be true that, if instead of realizing profits the concern had become involved, the succession would have had to bear half of the debts and liabilities, and thus possibly put into insolvency?

To recognize this theory as a proposition authorized by law would be to promulgate quite a dangerous doctrine, for which no precedent has been shown in this State. The reason for repudiating this theory is that successions cannot be considered as beings, susceptible of *forming* a partnership. The object of the law regulating the settlement of successions is to liquidate them promptly and prudently, so that when this is accomplished the residue passes at once to the heirs, whoever they be, testamentary or legal. When this is done the succession, as such, exists no more.

Although the executors cannot share the profits of the new firm, it does not follow, however, that the amount which they ought to have received at the expiration of the six months allowed to wind up and which has served to enrich that firm, shall remain barren and impoverish the recipients of the bounty of the testatrix. They are entitled to legal interest from the 9th day of August, 1882.

It is, therefore, ordered and decreed that the judgment of the lower court be amended so as to entitle the succession of Margaret Haughery

to recover from Bernard Klotz thirty-one thousand three hundred and forty-one dollars ($31,341 65), instead of eleven thousand and fifteen dollars and twenty-nine cents ($11,015 29), with legal interest from the 9th day of August, 1882, till paid, and costs of suit in both courts, besides the undivided half of the real estate and oven mentioned in this petition, and that thus amended said judgment be affirmed.

### ON APPLICATION FOR REHEARING.

WATKINS, J. We have been presented with quite an elaborate application for a rehearing of this cause, and but for counsel's disclaimer, should feel disposed to consider it censorious and disrespectful.

We sincerely trust that we shall not, in the future, feel constrained to *mention* to attorneys their obligation of courtesy to the Court.

We have carefully examined and considered the application for rehearing; read all of the briefs of counsel again; made a careful inspection of the two transcripts, and compared them with our opinion, and have reached the conclusion that the principles of law therein announced are entirely correct.

For the purpose of being accurate and of better condensing the statement of the case, we will cite a few of the salient facts we have gleaned from the record :

On the 29th of June, 1878, Margaret Haughery and Bernard Klotz formed a partnership for the purpose of conducting a bakery business for a term of ten years.

They were full and equal partners, and the profits or losses were to be shared by them equally, and all the expenses of the business were to be borne by each proportionately.

Margaret put into the partnership merchandize, etc., valued at $20,000, as the capital stock, and donated to Klotz one-half interest therein; and this donation constituted his part of the capital invested in the business.

The partnership did quite a profitable business until the 9th of February, 1882, when Margaret died.

Klotz, as surviving partner, was, under the articles of partnership, entitled to retain control and continue the *administration* of the partnership *affairs* for a period of six months thereafter.

On the 15th of October, 1879, Margaret and Klotz purchased of John T. Moore the real estate which figures on the inventory and on which the partnership business was conducted, then and since, for the price of $15,500.

On the 20th of February, 1882, the defendants, as the testamentary

executors of Margaret, caused an inventory and appraisement to be made of all the *partnership* effects. It covered, substantially, the following values, viz:

Goods and personal effects...............................$20,268 81½
Real estate.......................................... 14,000 00
Book accounts....................................... 14,990 00

    Total value....................................$49,258 81
Of this, $1500 was in cash.

At this date the six months' term of Klotz's administration as liquidator began, and it closed on August 20, 1882.

There were large profits made by him during that term.

Mr. Chapotin, one of the persons chosen by the executors to examine the books of the firm, and upon whose reports all parties seem to rely—as witness for the plaintiff says, on this subject:

Question. "Mr. Chapotin, from your examination, that you have made of the books, can you tell us whether or not the firm of Margaret Haughery & Co. made any money or profits since the ninth of February?"

Answer. "Certainly."

Q. "Well, what profit did they make?"

A. "I took a memorandum from the 9th of February, 1882. They made sales, $87,948, and made a profit of 31% = $27,197 gross."

Q. "That was for four months?"

A. "Yes sir; for four months."

This witness shows what had been the *net* profits of this partnership during previous years, as follows, viz:

Mr. Klotz's share of the *net* profits of the first year was.....$ 9,184.23
The second year........................................ 7,989.38
The third year......................................... 3,487.97
The fourth year (*to June 20*)........................... 9,326.02

    Total amount of Klotz one-half interest in the partner-
      ship profits from its establishment to June 20, 1882...$29,987.60

These were *actual* profits realized, as will be shown by the report of the experts and the testimony of Mr. Chapotin, in which is given the amounts that Klotz withdrew from the cash of the firm, on his private account, thus:

Question. "Well, take the report and say how much Mr. Klotz has drawn since he has been a member of the firm of Margaret Haughery & Co."

Answer. "The different items?"

Q. "Yes, each year."

A. "Well, he has drawn—he has had profits on the 30th of June,. 1882.  Mr. Klotz had to his credit, all told, $3097 42."

Q. "What has been the drawing of Mr. Klotz since he entered the partnership ? "

A. "Let me see.  The first statement I have will tell you."

Q. "He commenced with a capital of $10,000 ? "

A. "Yes, sir."

Q. "Donated by Margaret ? "

A. "Yes, sir."

Q. "Now, what has he drawn since that partnership, each year ? "

A. "He began with a capital of $10,000.  He has drawn the first year $4934 48 ; the second year he has drawn $11,903 39 ;    *    *    * the third year $8072 89."

Q. "And the fourth year ? "

A. "The last year, it was only up to the 20th of June (1882)."

Q. "Well, up to the time the *last report was made* what had been drawn ? "

A. "Six thousand seven hundred and seventy-nine dollars and eighty-eight cents."

Q. "He had drawn for the year 1882, up to the 20th of *February?*"

A. "Six thousand seven hundred and seventy-nine dollars and eighty-eight cents."

*    *    *    *    *    *    *    *    *

Q. "I am simply asking you what his draft has been."

A. "Well, you want me to take it from the 'trial balance,' and it cannot be done."

Q. "Well, will you look at the ledger and tell us ? "

A. "Well, yes, sir."

Q. "Well, look at the trial balance of June."

A. "At the end of June the trial balance shows Bernard Klotz's private account $11,997 32."

Q. "That is up to the 30th of June ? "

A. "Yes, sir."

Q. "Of this year ? "

A. "Yes, sir."

Up to and including the 30th of June, 1882, Klotz is shown, by this indubitable evidence, to have withdrawn the total sum of $36,908 08, *more than three and one-half* times the amount of *his* original capital, within four years.

We have, then, this statement:

Klotz vs. Macready et al.

Klotz's capital............................$10,000 00
Klotz's profits............. ................. 29,987 60—$39,987 60
        Cr.
Klotz's drawings....... ................................... 36,908 08

        Balance to his credit.................................$ 3,079 52
    This is upon the hypothesis that the stock had been kept up to the
original standard of $20,000.

    The significance of these figures, when considered in relation to the
plaintiff's *present* contention, appears the more manifest from the fact
that they were selected from transcript 8661, and were therein relied
upon to establish his claim to a new term of liquidation, upon the theory
that his administration, as such, had been profitable.

    In taking this standpoint in which to *review* this case, *we* do the
plaintiff no injustice. If injustice has been done him—and we do not
think there has—it proceeds from evidence *he has furnished*.

    Let us see, in this connection, what Margaret's drawings were, and
the state of her account at her death :·

She drew during the first year............................$ 6.674 54
She drew during the second year......................... 4,456 23
She drew during the third year.......................... 4,580 36
She drew February 9, 1882.....,......................... 3,321 57

        Margaret's drawings are............................$19,032 72
Her capital (*original*) and profits......................... 39,987 60

        She has to her credit.........:................. ` .....$20,954 88
    An inspection of the report of the experts will show that Klotz is
indebted to the balance on stock account of $5750 72 instead of
$3079 52, as stated in this report. But that results from the fact that
the experts did not take into their account *his* drawings, or profits of
the year 1882, to June 20, as we have done.

    On the other hand, Margaret is entitled to an additional allowance
for the additions she made to her capital, from time to time, as shown
by the report of the experts, viz:

    From collections from sundry old accounts—
To June 30, 1880.........................................$4,332 43
To June 30, 1887......................................... 1,443 50
To part of last year (1882)............................... 240 00

        Total.............................................$6,015 93
    This would increase her share to $26,970 81.

The statement of the assets on hand at Margaret's death, made by the experts shows the following facts, viz:

Stock on hand.........................................$14,000 00
Bills receivable.......................................     159 82
Cash..................................................   2,359 89
Sundry debtors........................................  16,270 10
Machinery.............................................  12,312 99
Lafrya stock..........................................     250 00

         Total..............................................$45,352 80

As we have, in our preceding calculation of the respective interests, proceeded upon the basis of $20,000 of capital stock, that sum should be deducted from the total amount of assets; and this would leave a surplus remaining of $25,352 80. But the report of the experts shows that the firm liabilities were $19,622 62. They include the $10,000 mortgage note that the firm negotiated; sundry creditors, as per ledger; rent; wages, interest on note, etc.

Deducting this sum from the balance of the assets, and there remains $5,730 18. Adding one-half of this balance to the share of Margaret, previously ascertained, and she will have $29,835 90, and Klotz will have $5944 61.

This statement does not include the real estate, $16,436 21 ; nor the Reed oven No. 1, $900; nor the profits of the partnership, from the 20th of June to the 20th of August, 1882, the date at which the term of six months' liquidation ended.

The difference between the present computation, made from the transcript and expert testimony and reports, and the amount awarded in our decree, is $1,505 75. If the items above mentioned, except the real estate, were taken into the account, there would be no difference whatever.

The district judge fixed the value of the partnership prop-
    erty at ...........................................  $58,857 28
Including real estate..................................   16,436 21

Net value, less real estate............................  $42,421 07
He then deducted liabilities...........................   19,622 34

And found a balance of.................................  $22,798 73

And gave half to each .................................$11,399 36

The learned judge of the lower court was certainly incorrect in

making an *equal* apportionment between the parties; and we think our statement of the values is near the proper figure.

In support of the theory announced, we have the uncontradicted statement of Mr. Macready, one of Margaret's executors. He says, on p. 390 of transcript No. 9607, viz: "We (the executors) had the books thoroughly examined by an expert—in fact one or two experts—and we came to the conclusion that Margaret's interest, at the end of the partnership, which would be six months after her death, ought to be worth in the neighborhood of $40,000,

"Knowing there was a depreciation to some extent in the machinery, and bad debts to a certain extent, we made an allowance of $10,000, one-half of which was to be borne by Mr. Klotz, and one-half by Margaret Haughery's estate—and her interest would represent $35,000.

"We authorized our lawyer to make an arrangement on that basis."

On May 24, 1882, Klotz proposed to pay $32,000 for Margaret's interest, including her half interest in the real estate, valued at $7000.

If we deduct the $7000, value of the real estate, from the $32,000, Klotz's offer would be $25,000; and the judgment rendered is just about a *mesne* between the two offers of settlement made by the respective parties.

The defendant's counsel have entered, in this Court, a formal *remittitur* of the sum of $624 42, to which the plaintiff is entitled a credit. Our former opinion is correct.

Rehearing refused.